Filed 11/26/24  P. v. Lugos CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGEL ROJAS LUGOS,<br><br>    Defendant and Appellant. | H051087<br>(Monterey County<br> Super. Ct. No. 21CR004187) |

## I.  INTRODUCTION

A jury convicted defendant Angel Rojas Lugos of two counts of oral copulation with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b); counts 1–2),[1] and 14 counts of forcible lewd acts upon a child (§ 288, subd. (b)(1); counts 3–16).  The trial court sentenced defendant to consecutive sentences of 15 years to life on each of counts 1 and 2, and to consecutive middle term sentences of eight years on each of counts 3 through 16.

Defendant raises three arguments on appeal:  (1) substantial evidence does not support his convictions on some of the 14 counts of forcible lewd acts upon a child; (2) the trial court erred by imposing full, consecutive term sentences for each of counts 3 through 16 because the record does not contain substantial evidence that all 14 of the charged acts took place on separate occasions within the meaning of section 667.6,

---

[1] All further statutory references are to the Penal Code.

subdivision (d); and (3) the trial court's imposition of full, consecutive term sentences on counts 3 through 16 violated the Sixth Amendment to the United States Constitution.

For the reasons discussed below, we do not agree with defendant's contentions regarding the first and third issues, but we agree that the record does not contain substantial evidence that counts 3 through 16 each took place on separate occasions within the meaning of section 667.6, subdivision (d) (hereafter section 667.6(d)). Accordingly, we will reverse the judgment and remand for resentencing.

## II. BACKGROUND

Jane Doe[2] lived with her mother but spent several nights a week at her grandmother's mobile home. When she stayed overnight at her grandmother's home, Doe slept on the couch in the living room and her uncle, who was four years older than her, slept on a different couch in the same room. Doe's grandmother slept in a bedroom with defendant, her husband. Defendant was not Doe's biological grandfather, but he had been married to Doe's grandmother for many years and Doe referred to defendant as her grandfather.

In March 2021, shortly after her tenth birthday, Doe reported to her mother that defendant had been sexually abusing her. When she told her mother about the abuse, Doe cried, which her mother said was abnormal behavior for her. Doe's mother then told her coworkers about Doe's report, and the coworkers encouraged Doe's mother to report the matter to appropriate authorities. Doe's mother told her son's speech therapist about Doe's report, and the speech therapist in turn notified law enforcement.

A recording of a subsequent forensic interview of Doe by a therapist was played for the jury in defendant's trial. In the interview, Doe stated that at times defendant would touch and lick her vaginal area, attempt to place his penis in Doe's mouth and then contact Doe's cheek with his penis when Doe closed her mouth and turned her head, and

_____

[2] "Jane Doe" is a pseudonym used in the information. We refer to her in the same way to protect her privacy interests. (See Cal. Rules of Court, rule 8.90(b)(4).)

2

contact the "middle" of her vaginal area with his penis. Doe testified that defendant started touching her leg when she was eight years old, but that the sexual acts she described started after her ninth birthday in February 2020 and occurred only once after her tenth birthday before she told her mother about the abuse. Doe stated that defendant licked her vaginal area "[m]ore than one time." Doe stated that defendant contacted her vaginal area with his penis "like, 10 or more times," and she stated that defendant's penis contacted her face "[l]ike, four times." Doe told the interviewer that when defendant contacted her vaginal area and her face with his penis, his penis emitted a "clear," "watery," and "gooey" substance. She stated that when defendant would contact her vaginal area with his penis, he would "move me up and down or side to side." She stated in the interview that when defendant "did the stuff to me there was an odor" coming from his penis. Doe told the interviewer that when defendant committed these acts, he sometimes ripped her clothes. Doe also stated that she would sometimes sleep on the floor at her grandmother's home, which allowed her to roll herself up tighter in a blanket in an effort to prevent defendant from removing her blanket. Doe reported that the sexual abuse normally occurred in the morning before defendant left for work, that neither her grandmother nor her uncle ever awoke to see what was occurring, that she tried to resist defendant's actions but he was too strong, and that she did not call for help because she thought her grandmother would wake up and get mad at her.

Doe testified at trial. She testified as to the same acts by defendant as she earlier described in the forensic interview. However, while her statements in the forensic interview asserted that defendant had merely "touched" her vaginal area with his penis and that his "special part went on top of mine," at trial she testified that "he would put his inside of mine." When the prosecutor asked her how many times defendant placed his penis "in the middle of" her vaginal area, she replied, "[m]ore than once." She also testified that defendant contacted her face with his penis "[m]ore than once." Consistent with her statements in the forensic interview, Doe testified that defendant licked her

3

vagina "more than once." At one point, Doe testified concerning the overall sexual abuse that "sometimes he would do it and sometimes he wouldn't." The prosecutor later asked Doe: "And did all of these things happen fairly often?" Doe replied: "Not that often."

Doe's mother also testified for the prosecution. She testified about Doe reporting defendant's actions to her. She also testified that before Doe's report when she went to Doe's grandmother's house, she found Doe was "off the sofa and I would find her on the other side of the living room," and that when she asked Doe's grandmother about this, Doe's grandmother replied that Doe was a "crazy sleeper" and "fell off the sofa and she rolled off to the other side." Doe's mother testified that "stuff like that I started to notice." Doe's mother also testified that "[t]here was other times where I started to notice like this morning smell in the house when -- especially when [Doe] was in the living room." Doe's mother testified that the odor "came through like an after-sex smell for me." In addition, Doe's mother testified that Doe provided her a pair of pants that Doe said defendant ripped, and that she in turn provided the pants (which had been laundered) to a detective.

The prosecution called three other witnesses. A pediatric nurse practitioner testified that two forensic examinations were performed on Doe, that these examinations revealed no findings of sexual abuse, and that having no findings was not inconsistent with a report of sexual abuse because "[i]n about 90 percent of cases there are no findings." A sheriff's detective testified concerning the forensic interview of Doe and the pants collected from Doe's mother, and the prosecution played the video of Doe's forensic interview for the jury and introduced the pair of pants into evidence. Finally, a clinical psychologist provided expert opinion concerning the psychological effects of child sexual abuse.

Defendant testified at trial; his testimony consisted of a one-word answer to a question in which he denied Doe's allegations. Doe's uncle testified that after Doe reported defendant's actions, Doe "told me it was a dream, that she said it was just a

4

dream that what my grandpa did to her." However, on cross-examination, Doe's uncle testified that at first, Doe told him that she was "having dreams" about what defendant did to her. An adult child of Doe's grandmother testified that he never heard or saw "anything out of the ordinary" in the mobile home and that Doe never complained about "anything out of the ordinary" to him. However, this witness testified that he moved out of the home soon after Doe's ninth birthday, the age when Doe testified the sexual abuse began. Finally, defendant's wife (Doe's grandmother) testified that when defendant would wake up in the morning to go to work, she would get up and make defendant's lunch in the kitchen that adjoined the living room. Defendant's wife testified that she suspected Doe was being physically abused at Doe's mother's house based on bruises she observed on Doe, though she testified that she never reported any such abuse. Defendant's wife also testified that shortly before the report of sexual abuse was made, she "snitched on" Doe's mother for dating someone else besides the father of her youngest child, that defendant played a role in the discovery of this other relationship, and that in response Doe's mother told Doe's grandmother, "I'm going to hurt you where it most hurts." However, Doe had earlier testified on cross-examination that Doe's mother had not been romantically involved with the father of her youngest child for some time before Doe reported defendant's sexual abuse.

The second amended information charged defendant with two counts of oral copulation with a child 10 years of age or under (§ 288.7, subd. (b)), and 14 counts of forcible lewd acts upon a child (§ 288, subd. (b)(1)). Each offense was alleged to have been committed between February 23, 2020 (Doe's ninth birthday) and March 16, 2021. Concerning the forcible lewd act counts, the trial court instructed the jury in accordance with CALCRIM No. 3501 as follows: "The People have presented evidence of more than one act to prove that the Defendant committed these offenses. You must not find the Defendant guilty unless, one, you all agree that the People have proved that the Defendant committed at least one of these acts, and you all agree on which act he

5

committed for each offense; or, you all agree that the People have proved that the Defendant committed all the acts alleged to have occurred during this time period and have proved that the Defendant committed at least the number of offenses charged." In closing argument, the prosecutor addressed the rationale for the charges in the second amended information. The prosecutor stated that counts 1 and 2, alleging oral copulation with a child 10 years of age or under, were for defendant's acts of licking Doe's vagina, which Doe testified occurred more than once. The prosecutor argued that four of the counts of forcible lewd acts upon a child—counts 3 through 6—"are all of the times that he would try to make her orally copulate him, but she did not, and his penis would just make contact with her cheek because she would clamp her mouth shut and move from side-to-side," noting that in the forensic interview, Doe stated that this happened four times. Concerning the remaining 10 counts of forcible lewd acts upon a child—counts 7 through 16—the prosecutor argued that these counts represented "the incidents where the Defendant would put his penis in the middle of her vagina," which Doe stated in the forensic interview occurred 10 or more times.

The jury convicted defendant on all counts. Defendant waived a jury trial on four aggravating circumstances alleged in the second amended information, and the trial court found two of these aggravating circumstances true. At sentencing, defense counsel requested an aggregate sentence of 20 years, while the prosecutor requested a sentence of 15 years to life for each of counts 1 and 2 and 10-year upper term consecutive sentences for each of the remaining counts. After noting the two aggravating circumstances the trial court had found true and one mitigating circumstance that applied, the trial court stated: "In weighing the factors in aggravation and the factors in mitigation, as well as considering that each of these counts was a separate and distinct act, the Court is going to run each count consecutively." Thus, the trial court imposed terms of 15 years to life for each of counts 1 and 2, running consecutively for a total term of 30 years to life. Concerning the 14 counts of forcible lewd acts upon a child, the trial court imposed full,

6

consecutive, middle term sentences of eight years for each count, for a total determinate term of 112 years.

This appeal timely followed.

## III.   DISCUSSION

### A. *Sufficiency of the Evidence, Counts 3 Through 16*

Defendant first contends that substantial evidence does not support his convictions concerning each of the 14 counts of forcible lewd acts upon a child.  He argues that Doe's " 'generic testimony' " about the sexual abuse "did not provide factual details differentiating between similar assaults committed on various occasions."  Specifically, defendant asserts that Doe's testimony does not provide substantial evidence to support all 14 counts of forcible lewd acts upon a child pursuant to *People v. Jones* (1990) 51 Cal.3d 294 (*Jones*) because Doe's testimony failed to "describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information . . . ."  (*Id.* at p. 316.)

### 1.  Legal principles and standard of review

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]" (*Jones*, *supra*, 51 Cal.3d at p. 314.)  "Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not

7

substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" (*Ibid.*)

In *Jones*, the California Supreme Court addressed "difficult questions regarding the extent to which the defendant's due process rights are implicated by the inability of his young accuser to give specific details regarding the time, place and circumstances of various alleged assaults." (*Jones*, *supra*, 51 Cal.3d at p. 299.) The court recognized: "Child molestation cases frequently involve difficult, even paradoxical, proof problems. A young victim . . . assertedly molested over a substantial period by a parent or other adult residing in his [or her] home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents. . . . Accordingly, any constitutional principles or evidentiary standards we develop should attempt to assure that the resident child molester is not immunized from substantial criminal liability merely because he [or she] has repeatedly molested his [or her] victim over an extended period of time." (*Id.* at p. 305.) The court in *Jones* also recognized: "On the other hand, the defendant has a due process right to fair notice of the charges against him [or her] and reasonable opportunity to defend against those charges. In addition, the defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged. Finally, the defendant's conviction can be sustained only if supported by substantial evidence." (*Ibid.*)

The California Supreme Court in *Jones* then attempted "to balance the defendant's legitimate due process rights with the interests of the People in securing convictions in appropriate cases." (*Jones*, *supra*, 51 Cal.3d at p. 313.) In the context of substantial evidence review, the court agreed with previous Court of Appeal decisions that concluded that "generic testimony is sufficiently substantial from an evidentiary standpoint," and while emphasizing the need to exercise prosecutorial discretion, the court stated: "It must be remembered that even generic testimony (e.g., an act of

intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*Id.* at pp. 313–314.) The court in *Jones* stated that "the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction. [Citations.]" (*Id.* at pp. 315–316.)

Our state Supreme Court then laid out three " 'ground rules' " to guide courts in determining whether substantial evidence supports a conviction in the case of a child victim who provides "generic testimony" about sexual abuse. (*Jones*, *supra*, 51 Cal.3d at pp. 313–314.) The first ground rule the *Jones* court laid out was as follows: "The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy)." (*Id.* at p. 316.) The court in *Jones* described the second ground rule as follows: "Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')." (*Ibid.*) The *Jones* court then set forth the third and final ground rule: "Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*Ibid.*) The California Supreme Court then stated: "Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Ibid.*)

"The *Jones* court also separately addressed whether the victim's generic testimony violated the defendant's due process rights. [Citation.] First, it held that reliance on generic evidence did not violate a defendant's due process right to notice. . . . Second,

the court concluded that reliance on generic testimony did not deprive a defendant of his or her due process right to present a defense. [Citation.] Finally, the court held that a defendant's right to a unanimous verdict was ensured by unanimity instructions. [Citation.]" (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1020.)

> ## 2. Substantial evidence supports defendant's convictions on counts 3 through 16.

Defendant concedes that Doe's testimony satisfied the first and third ground rules laid out in *Jones* in that Doe both: (1) described the kind of acts committed with sufficient specificity to ensure that unlawful conduct occurred and to differentiate between the various types of proscribed conduct; and (2) described the general time period in which the acts occurred to ensure that the acts were committed within the applicable limitation period. However, defendant contends that Doe's testimony failed to satisfy the second *Jones* ground rule because her testimony did not establish the number of acts committed with sufficient certainty to support each of the 14 counts of forcible lewd acts with a child. We conclude that substantial evidence supports defendant's convictions concerning each of these 14 counts.

At trial Doe only quantified that the two types of forcible lewd acts each occurred more than once. However, a videorecording of Doe's forensic interview was admitted. In this interview, Doe stated that defendant contacted her face with his penis four times and that defendant placed his penis in her vaginal area ten times or more. The prosecutor argued that these statements provided the basis for the 14 counts of forcible lewd acts upon a child. The jury was instructed in accordance with CALCRIM No. 3501 that it could not find defendant guilty unless the jury agreed that defendant committed all the acts alleged and that defendant "committed at least the number of offenses charged." The jury could have reasonably concluded that Doe's statements, provided much closer in time to the charged offenses than her trial testimony, proved beyond a reasonable doubt that defendant committed 14 instances of forcible lewd acts with a child—ten of one type

10

and four of another. Doe's testimony at trial was not inconsistent with her statements in the forensic interview; she simply provided a more specific quantity of the number of lewd acts in her forensic interview than at trial. The jury could also conclude that other evidence supported Doe's statements in the forensic interview concerning the number of times defendant committed these acts, including the testimony that Doe spent several nights a week at her grandmother's house and the testimony from Doe's mother that she repeatedly noted an "after-sex smell" in the house when Doe was in the living room. Viewing the evidence in the light most favorable to the judgment below, we determine that the record contains substantial evidence supporting defendant's convictions on each of the 14 counts of forcible lewd acts upon a child.

Defendant asserts that the evidence is insufficient because Doe failed to state, for example, that the acts occurred " 'twice a month' or 'every time we went camping,' " as stated in *Jones*. (*Jones*, *supra*, 51 Cal.3d at p. 316.) However, *Jones* used these as examples to outline when a child victim sufficiently describes the number of acts committed. Under *Jones*, these examples could suffice where the child victim could not otherwise quantify how often the sexual abuse occurred. Here, by assigning an actual number to the frequency of defendant's acts, Doe did exactly what *Jones* requires. Doe "specified the type of conduct involved . . . and its frequency . . . , and confirmed that such conduct occurred during the limitation period. Nothing more is required to establish the substantiality of the victim's testimony in child molestation cases." (*Id.* at p. 316.)

Defendant cites the factual scenarios in *Jones* and *People v. Newlun* (1991) 227 Cal.App.3d 1590 (*Newlun*) to support his argument that Doe's testimony did not provide substantial evidence concerning the number of defendant's forcible lewd acts. Neither case supports his argument. In *Jones*, a victim testified that he was molested at five different locations, "although he had difficulty specifying the exact dates or additional details to further identify these acts." (*Jones*, *supra*, 51 Cal.3d at p. 302.) As to two of these locations, this victim testified that "defendant molested him *four to six times on*

11

*camping trips*," and "*eight or ten times in the bathroom or shower*." (*Ibid.*) Concerning a nearly two-year period of overall abuse, this victim testified that "[t]he molestations recurred *once or twice a month* during the entire period in which [the victim] lived with defendant . . . , although there may have been some 'breaks' in the period when no molestation occurred for more than a month." (*Ibid.*) The California Supreme Court concluded that this victim's testimony "was substantial evidence of frequent (once or twice each month) molestations by defendant, at five separate locations . . . ." (*Id.* at p. 322.) Thus, the court in *Jones* found that substantial evidence supported defendant's convictions of six counts of lewd conduct concerning this victim. (*Id.* at pp. 301, 322.) Defendant argues that by referencing a child victim's testimony that the abuse was "frequent (once or twice each month)," the California Supreme Court implicitly concluded that the numerical values this victim assigned to the abuse on camping trips and in the bathroom or shower were insufficient. However, no such statement can be implied. Instead, the court in *Jones* concluded that the entirety of this child victim's testimony was sufficient to establish the defendant's convictions on each count. (*Id.* at pp. 301, 322.) The fact that a child victim in *Jones* was able to describe both the number of times the abuse occurred in two specific locations and a general frequency of the overall abuse during the charged period does not mean that the victim's numerical values alone were insufficient.

Meanwhile in *Newlun*, the defendant was convicted of 15 counts of lewd and lascivious acts with a child. (*Newlun*, *supra*, 227 Cal.App.3d at p. 1594.) The Court of Appeal held that the child victim's testimony "did not adequately establish the number of lewd acts committed" where the victim first testified that the defendant vaginally penetrated her 11 times and then stated that defendant did so only five times, and the victim "gave no testimony whatsoever about the number of acts of sodomy or oral copulation defendant committed." (*Id.* at p. 1601.) In this situation, the Court of Appeal stated that the victim's testimony alone did not provide substantial evidence of the

number of acts committed, but expert medical testimony did constitute "substantial evidence supporting the 15 counts upon which defendant was convicted." (*Id.* at p. 1602; see *id.* at p. 1601.) The instant case is distinguishable. In *Newlun*, the victim assigned a specific number as to only one type of lewd and lascivious acts that occurred, and this testimony was inconsistent and did not allege that the defendant committed 15 such acts. Here, Doe testified that at least 14 instances of forcible lewd acts occurred—ten or more of one type and four of another—and defendant was accordingly convicted of 14 counts of forcible lewd acts with a child.

Doe testified as to specific acts of sexual abuse defendant committed upon her. She did so by reference to two specific dates: her ninth birthday, which provided the earliest possible starting point of the sexual abuse, and her tenth birthday, soon after which she reported the abuse to her mother and the abuse stopped. While Doe's testimony was generic in the sense that she did not describe individual incidents of sexual abuse, Doe stated the number of times defendant committed the two types of forcible lewd acts— defendant contacted her face with his penis four times and placed his penis in her vaginal area ten times or more. Viewing the evidence in the light most favorable to the prosecution and presuming in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence, substantial evidence supports defendant's conviction on each of the 14 counts of forcible lewd acts upon a child. (See *Jones*, *supra*, 51 Cal.3d at p. 314.)

**B.** *Consecutive Sentences on Counts 3 Through 16*

As discussed above, the trial court stated the following in imposing defendant's sentence: "In weighing the factors in aggravation and the factors in mitigation, as well as considering that each of these counts was a separate and distinct act, the Court is going to run each count consecutively." Defendant contends that substantial evidence does not support the trial court's decision to sentence him to full, consecutive terms on each of

counts 3 through 16 under section 667.6(d), because the record does not support the conclusion that defendant committed each of these offenses on separate occasions.

### 1. Legal principles and standard of review

" 'When a person is convicted of two or more crimes,' California law generally requires a court to determine 'whether the terms of imprisonment . . . shall run concurrently or consecutively.' [Citation.]" (*People v. Catarino* (2023) 14 Cal.5th 748, 752 (*Catarino*).) Section 1170.1 addresses aggregate and consecutive terms for multiple convictions, stating that generally when a person is convicted of multiple felonies, one shall be designated as the principal term and any consecutive sentences imposed on the remaining offenses "shall consist of one-third of the middle term of imprisonment prescribed. . . ." (*Id.*, subd. (a).) "Section 1170.1 governs most determinate sentencing. For certain sex offenses, however, the Penal Code establishes two alternative sentencing frameworks. First, under section 667.6, subdivision (c) . . . , 'a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion.' This is '[i]n lieu of the term provided in Section 1170.1.' [Citation.] . . . Second, under section 667.6(d), if the sentencing court finds that multiple sex offenses carrying determinate terms involved separate victims or were committed on separate occasions, '[a] full, separate, and consecutive term shall be imposed for each violation,' and the terms 'shall not be included in any determination pursuant to Section 1170.1.' [Citation.]" (*Catarino*, *supra*, at p. 752.) "A court that makes a section 667.6(d) finding cannot impose one-third of the middle term for the defendant's subordinate term as prescribed by section 1170.1, nor can the court run the terms concurrently. It must impose a full-term sentence for each offense it finds to have involved a different victim or to have been committed on a separate occasion." (*Id.* at p. 753.)

14

Section 667.6, subdivision (c) (hereafter section 667.6(c)) states that "if the crimes involve the same victim on the same occasion," the court "may" impose full, consecutive sentences for each violation. Section 667.6(d)(1) states that for listed sexual offenses including forcible lewd acts upon a child, "[a] full, separate, and consecutive term shall be imposed for each violation . . . if the crimes involve separate victims or involve the same victim on separate occasions." Section 667.6(d)(2) states: "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned the opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

"Under the broad standard established by Penal Code section 667.6, subdivision (d), the Courts of Appeal have not required a break of any specific duration or any change in physical location." (*People v. Jones* (2001) 25 Cal.4th 98, 104.) "A finding that the defendant committed the sex crimes on separate occasions 'does not require a change in location or an obvious break in the perpetrator's behavior.' [Citation.]" (*People v. King* (2010) 183 Cal.App.4th 1281, 1325, fn. omitted (*King*).)

"In applying this standard, courts have held, for example, the offenses of placing a finger in the victim's vagina, kissing her genitals and then placing his penis in her vagina were but a single occasion. [Citations.] Similarly, where a defendant raped the victim, then ' "got off of her, twisted her by the legs violently, and orally copulated her," ' the offenses occurred on a single occasion. [Citations.] [¶] In contrast, where the offenses are interrupted by the defendant's nonsexual activity, they occur on a separate occasion. [Citation.] Where a defendant left a car after a bout of sexual assault, but returned 15 minutes later and raped the victim a second time, the second rape occurred on a

15

separate occasion. [Citations.] Where the defendant moved the victim from one place to another, and also stopped an assault to listen to the victim's answering machine before resuming, the offenses occur on separate occasions. [Citations.] Where the defendant's assault was interrupted by the outside event of an observer driving by, but then resumed the assault, it indicated reflection by the defendant, and the second assault occurred on a separate occasion. [Citations.]" (*People v. Dearborne* (2019) 34 Cal.App.5th 250, 265–266.)

"Once a trial judge has found under section 667.6, subdivision (d) that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his [or her] assaultive behavior. [Citations.]" (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092 (*Garza*).)

### 2. Substantial evidence does not support the trial court's determination that counts 3 through 16 were each committed on separate occasions.

Initially, defendant asserts that the trial court's comments at sentencing do not make clear whether the trial court imposed the full, consecutive sentences under subdivision (c) or subdivision (d) of section 667.6. The Attorney General argues that the trial court imposed the full, consecutive sentences under section 667.6(d), but that if its decision to do so was not supported by substantial evidence, the error is harmless because the record reveals that the trial court would have exercised its discretion to do so under section 667.6(c). We interpret the trial court's comments at sentencing to mean that it believed full, consecutive sentences were required under section 667.6(d), not discretionary under section 667.6(c). By stating that the court would run each count consecutively because "each of these counts was a separate and distinct act," the trial court incorporated the standard in section 667.6(d)(1) that a full, consecutive term is required if the crimes "involve the same victim on separate occasions." In addition,

16

"[a] decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively." (*People v. Belmontes* (1983) 34 Cal.3d 335, 347 (*Belmontes*).) "What is required is an identification of the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c). The crucial factor, in our view, is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)." (*Id.* at p. 348, fn. omitted.) Here, the trial court's brief comments at sentencing do not constitute a sufficient statement of reasons under section 667.6(c). We therefore analyze this issue under the standard applicable to section 667.6(d).

Doe's testimony provided substantial evidence to conclude that defendant committed ten or more acts of placing his penis in Doe's vaginal area and four acts of placing his penis on Doe's face, and the overall tenor of her testimony established that he committed these acts on multiple occasions. However, her testimony did not establish whether some of these acts might have occurred together during the same overall episode. Her testimony also did not demonstrate whether any reasonable opportunity for reflection occurred during any acts that might have occurred during the same overall episode. At one point, Doe's testimony suggested that defendant would commit multiple forms of sexual abuse in succession. The prosecutor asked Doe to describe step-by-step what would happen when defendant sexually abused her, and she testified as follows: "He would lick my special part and then he would put his inside of mine, then he would try to put his inside of my mouth." At another point, Doe testified that after defendant would commit oral copulation upon her, "[h]e would try to put his special part inside of my mouth." This generic testimony the prosecution elicited in reliance on *Jones* does not support the trial court's conclusion that each of the 14 instances of forcible lewd acts upon a minor "was a separate and distinct act . . . ." The trial court did not engage in any analysis on this point, and the probation officer's report likewise contained no discussion

17

as to whether section 667.6(d) applied to defendant's situation.  In this situation, despite the deferential standard of review, substantial evidence does not support the trial court's conclusion that each of the 14 counts of forcible lewd acts on a minor was committed on separate occasions.

The Attorney General asserts that even if some of the forcible lewd acts for which defendant was committed occurred during the same overall episode, this does not mean that section 667.6(d) does not apply.  The Attorney General argues:  "[A]t a minimum, [defendant] had to change positions for those acts.  Further, [defendant] would forcibly remove Doe's clothes, as she tried to stop him.  [Citation.]  That gave [defendant] time to reflect on his actions before continuing to touch her."  The Attorney General cites *People v. Irvin* (1996) 43 Cal.App.4th 1063 (*Irvin*) among other cases in noting that some Court of Appeal decisions have affirmed section 667.6(d) findings of separate occasions when multiple acts took place during the same overall encounter, and argues that because a break of any specific duration or change in physical locations is not required, substantial evidence supports the trial court's finding that each of the 14 forcible lewd acts took place on separate occasions.

We have three concerns with the Attorney General's position.  First, while "[a] finding that the defendant committed the sex crimes on separate occasions 'does not require a change in location or an obvious break in the perpetrator's behavior' " (*King*, *supra*, 183 Cal.App.4th at p. 1325), the cases the Attorney General cites each contained some specific evidence supporting a finding that the defendant had a reasonable opportunity to reflect before resuming the assaultive behavior.  In *People v. Plaza* (1995) 41 Cal.App.4th 377 (*Plaza*), the Court of Appeal upheld the trial court's finding that five sexual offenses were committed on separate occasions where testimony demonstrated that between some of the acts, the defendant moved the victim to different locations within the home, paused to listen to the victim's answering machine and punch holes in the wall, and forced the victim's mouth open and warned her.  (*Id.* at pp. 382–383.)

Meanwhile in *Garza*, the Court of Appeal upheld full and consecutive sentences on three counts of forcible oral copulation, rape, and forcible digital penetration, concluding: "After defendant forced the victim to orally copulate him, he let go of her neck, ordered her to strip, punched her in the eye, put his gun to her head and threatened to shoot her, and stripped along with her. That sequence of events afforded him ample opportunity to reflect on his actions and stop his sexual assault, but he nevertheless resumed it. Thus, defendant's first act of rape was committed on a separate occasion from the forcible oral copulations. [Citation.]" (*Garza*, *supra*, 107 Cal.App.4th at p. 1092.) Here, no evidence comparable to that in cases such as *Plaza* and *Garza* is present, as Doe's testimony did not identify any reasonable opportunity to reflect between at least some of defendant's forcible lewd acts. In addition, the trial court here did not engage in the sort of substantive analysis on this point that the trial courts in *Plaza* and *Garza* did.

Second, as to the Attorney General's argument that defendant's act of removing Doe's clothes provided him with an opportunity to reflect, Doe did testify that defendant would remove her pants and underwear, and she stated in her forensic interview that her resistance to this act sometimes caused her clothes to rip. The pair of ripped pants admitted at trial corroborated her testimony. However, Doe's testimony did not specify whether defendant's act of removing her clothes occurred between different forms of forcible lewd acts or, instead, if defendant removed her clothes at the outset of his sexual offenses in a given episode. Doe's limited testimony on this point suggests the latter. For example, Doe testified that as she was sleeping on the couch, defendant would remove both his and her clothes. At a later point in her testimony, the prosecutor asked Doe to describe "step-by-step" what would happen when defendant would sexually abuse her. Doe began by stating she would be sleeping on the couch. The prosecutor asked Doe "[w]hat would happen next," and she replied: "Then he would take my pants and underwear off." The prosecutor then asked Doe what would happen after that, and she described various forms of sexual abuse. Thus, substantial evidence does not exist to

19

demonstrate that defendant's act of removing Doe's clothes provided him with a reasonable opportunity to reflect in between committing different types of sexual abuse.

Third and finally, the Attorney General's reliance on *Irvin* does not support the argument that substantial evidence supports the trial court's application of section 667.6(d). As the Attorney General notes, the Court of Appeal in *Irvin* stated as follows: "A violent sexual assault cannot and should not be considered in the same light as sexual acts shared between willing participants. Consensual sex may include times when the participants go back and forth between varied sex acts, which they consider to be one sexual encounter. By contrast, a forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter. Such a sexual assault consisting of multiple types of sex acts committed against the victim is not motivated by sexual pleasure. Instead, it is frequently intended to degrade the victim. Sexual acts, such as those committed by defendant, are the antithesis of a consensual sexual encounter and should not be viewed the same way. Therefore, at sentencing a trial court could find a defendant had a 'reasonable opportunity to reflect upon his or her actions' even though the parties never changed physical locations and the parties 'merely' changed positions." (*Irvin*, *supra*, 43 Cal.App.4th at p. 1071.) However, the court in *Irvin* then proceeded to state: "If a court concludes such a finding is appropriate, it must clearly explain its reasoning based upon a dispassionate review of the facts." (*Ibid.*) In the instant case, the trial court provided no such clear explanation of its reasoning. *Irvin* also noted facts not present in the instant case, including that the defendant got up to shut the bedroom door, had his attention directed away by a barking dog, stopped to make a comment to the victim, and took the victim to another room and had her shower before assaulting her again. (*Id.* at p. 1071) Even under these facts, the Court of Appeal concluded that "[w]e doubt any reasonable trier of fact could find that every act or offense was committed on a separate occasion," remanding the matter for resentencing to allow the trial court to make specific factual

findings as to whether some of the offenses were committed on separate occasions and to provide a statement of reasons for any full, consecutive sentences the trial court elected to imposed under section 667.6(c). (*Irvin*, *supra*, at p. 1071; see *id.* at p. 1072.)

We likewise reject the Attorney General's alternative argument that any error in applying section 667.6(d) was harmless because the record demonstrates that the trial court would have elected to exercise its discretion to impose full, consecutive sentences under section 667.6(c). The Attorney General quotes *People v. Osband* (1996) 13 Cal.4th 622, 728 (*Osband*) for the proposition that a sentencing error under section 667.6(c) is harmless where " '[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error.' [Citation.]" However, *Osband* made this statement in the context of determining whether improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement necessitated resentencing, not to state whether a trial court's failure to properly apply section 667.6(d) could be found harmless under section 667.6(c). (*Osband*, *supra*, at p. 728.) Here, the trial court apparently rested its sentencing decision on the application of section 667.6(d), and as a result, it had no occasion to determine whether it should exercise its discretion under section 667.6(c). In addition, as discussed above, a decision to impose full, consecutive sentences under section 667.6(c) requires a statement of reasons in which the trial court articulates its recognition that it is making a separate and additional choice in sentencing. (*Belmontes*, *supra*, 34 Cal.3d at pp. 347–348.) Here, the trial court provided no such statement. Therefore, we cannot say that the error is harmless.

We therefore remand this matter for resentencing for the trial court to make specific factual findings on the question of whether any of the 14 counts of forcible lewd acts upon a child were committed on "separate occasions" within the meaning of section 667.6(d). At resentencing, if the trial court determines that any of the 14 counts of forcible lewd acts upon a child did not occur on separate occasions, it may determine

21

whether full, consecutive sentences on such counts are nonetheless appropriate under section 667.6(c), providing a statement of reasons that reflects recognition that it is making a separate and additional sentencing choice in doing so.

### C. *Constitutionality of Section 667.5, Subdivision (d)*

Third and finally, defendant asserts that the trial court violated his Sixth Amendment right to a jury trial by imposing full, consecutive terms on counts 3 through 16 in accordance with section 667.6(d). He acknowledges that in *Catarino*, the California Supreme Court held that section 667.6(d) does not violate the Sixth Amendment. However, he argues that the United States Supreme Court's subsequent decision in *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*) "is applicable to section 667.6(d) and decisively undermines the constitutional premise of the California Supreme Court's decision in *People v. Catarino*." While we will remand this matter for resentencing based on the lack of substantial evidence supporting the trial court's section 667.6(d) findings, we nonetheless address this issue because at resentencing, the trial court will determine whether section 667.6(d) applies to some or all of defendant's offenses. We conclude that our state Supreme Court's decision *Catarino* is controlling on this issue.

As discussed above, section 667.6(d) states that for listed sexual offenses, "[a] full, separate, and consecutive term shall be imposed for each violation . . . if the crimes involve separate victims or involve the same victim on separate occasions." In *Catarino*, the defendant was convicted of six counts of forcible lewd acts on a child and one lesser included offense of attempt to commit this offense. (*Catarino*, *supra*, 14 Cal.5th at p. 750.) The trial court sentenced the defendant in *Catarino* to full, consecutive terms for each of the seven offenses, finding that they occurred on separate occasions. (*Ibid.*)

The California Supreme Court noted that pursuant to *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), the Sixth Amendment requires that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

22

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Catarino*, *supra*, 14 Cal.5th at p. 750, quoting *Apprendi*, *supra*, at p. 490.)  Our state Supreme Court in *Catarino* also observed that pursuant to *Alleyne v. United States* (2013) 570 U.S. 99 (*Alleyne*), "this rule applies 'with equal force to facts increasing the mandatory minimum' because an increase in the minimum term heightens 'the prescribed range of sentences to which a criminal defendant is exposed.' " (*Catarino*, *supra*, at p. 750, quoting *Alleyne*, *supra*, at p. 112.)  The court in *Catarino* held that the rule in *Apprendi* and *Alleyne* does not apply to section 667.6(d) and that the statute does not violate the Sixth Amendment's right to a jury trial.  (*Catarino*, *supra*, at p. 750.)

Our state Supreme Court observed that under *Oregon v. Ice* (2009) 555 U.S. 160 (*Ice*):  "States may, consistent with the Sixth Amendment, enact legislation to 'constrain judges' discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences.' " (*Catarino*, *supra*, 14 Cal.5th at p. 755, quoting *Ice*, *supra*, at p. 164.)  In holding that section 667.6(d) does not violate the Sixth Amendment, the court in *Catarino* reasoned:  "Like the statutes in *Ice*, section 667.6(d) is a 'specification of the regime for administering multiple sentences,' which 'has long been considered the prerogative of state legislatures.' [Citation.]  Section 667.6(d) applies only when a defendant 'has been tried and convicted of multiple offenses, each involving discrete sentencing prescriptions'; it governs how these sentences run relative to each other, a 'sentencing function in which the jury traditionally played no part.' [Citation.]  This is distinct from the *Apprendi* line of cases, which concerns 'sentencing for a discrete crime, not . . . for multiple offenses different in character or committed at different times.' [Citation.]  Had Catarino been convicted of only one offense, section 667.6(d) would have had no effect on the sentencing options authorized by the jury's verdict.  It is only because he was convicted by a jury of multiple offenses that section 667.6(d) applies to inform how each offense's authorized sentence runs relative to each other." (*Catarino*,

*supra*, at pp. 755–756.) The court in *Catarino* further stated: "Section 667.6(d)'s requirement of 'full' consecutive terms is also not a 'discrete sentencing prescription[]' within the meaning of *Apprendi*. [Citation.] Section 667.6(d) does not change what is a 'full' term or otherwise define the sentence for any particular offense. In this regard, it differs from the statute at issue in *Alleyne*, which provided that a defendant using or carrying a firearm must ' "be sentenced to a term of imprisonment of not less than 5 years," ' but if the firearm was brandished, the sentence must be ' "not less than 7 years." ' [Citations.] Rather than set or change the term authorized on an individual count as the statute in *Alleyne* did, section 667.6(d) requires that the term *already authorized* (§ 288, subd. (b)(1)) be meted out as a full term. Under the high court's reasoning in *Ice*, section 667.6(d) does not define or alter the term for any particular offense in a manner that invades the historical province of the jury." (*Id*. at p. 756.)

In *Erlinger*, the defendant pleaded guilty to being a felon in possession of a firearm. (*Erlinger*, *supra*, 602 U.S. at p. 825.) At sentencing, the trial court found that the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e)(1)) applied based on the defendant having three or more qualifying convictions for offenses committed on different occasions, which required a sentence of at least 15 years. (*Erlinger*, *supra*, at p. 826.) The United States Supreme Court held that "this case is as nearly on all fours with *Apprendi* and *Alleyne* as any we might imagine," and therefore that the defendant was "entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt . . . ." (*Id*. at p. 835.) Citing *Apprendi*, the United States Supreme Court in *Erlinger* reasoned as follows: "Virtually 'any fact' that ' "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" ' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea). [Citations.] Judges may not assume the jury's factfinding function for themselves, let alone purport to perform it using a mere preponderance-of-the-evidence standard." (*Erlinger*, *supra*, at p. 834.)

Nothing in *Erlinger* contravenes *Ice*, upon which *Catarino* relied. *Catarino* and *Ice* related to consecutive sentencing, while *Erlinger* involved sentencing for a single crime based on a finding of previous offenses on different occasions. Our state Supreme Court in *Catarino* relied on *Ice* to draw a contrast between section 667.6(d) and the *Apprendi* line of cases. (*Catarino*, *supra*, 14 Cal.5th at pp. 755–756.) The United States Supreme Court in *Erlinger* did not mention consecutive sentencing or its previous decision in *Ice*. Because *Erlinger* does not impact the continuing validity of *Ice*, and because *Catarino* relied on *Ice* to conclude that section 667.6(d) does not violate the Sixth Amendment, *Catarino* dictates that defendant's Sixth Amendment challenge to this same statute must fail.

## IV. DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for full resentencing. At resentencing, the trial court shall make specific factual findings on the question of which of the 14 counts of forcible lewd acts upon a child were committed on "separate occasions" within the meaning of Penal Code section 667.6, subdivision (d). At resentencing, if the trial court determines that any of the 14 counts of forcible lewd acts upon a child did not occur on separate occasions, it may determine whether full, consecutive sentences on such counts are nonetheless appropriate under Penal Code section 667.6, subdivision (c), and if it determines that full, consecutive sentences on any such counts are appropriate under this subdivision, it shall provide a statement of reasons that reflects recognition that it is making a separate and additional sentencing choice in doing so.

_____

BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____

GROVER, J.

_____

LIE, J.

***People v. Lugos***
**H051087**